United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

**IN RE RELATED CASES:**

JOHN J. NAVARRO,

Plaintiff,

v.

CORRECTIONAL OFFICER VINDIOLA, et al.,

Defendants.
_______________________________________/

No. C 09-1858 SBA (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(Docket no. 13)

MANUEL LOPEZ,

Plaintiff,

v.

CORRECTIONAL OFFICER VINDIOLA, et al.,

Defendants.
_______________________________________/

No. C 09-3869 SBA (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(Docket no. 21)

## INTRODUCTION

Plaintiffs John J. Navarro and Manuel Lopez filed separate civil rights actions pursuant to 42 U.S.C. §1983, arising from a May 18, 2008 interaction with Salinas Valley State Prison (SVSP) Correctional Officers Rodriguez and Vindiola. Thereafter, the two actions were related.

On May 18, 2008, Plaintiffs, who are documented members of rival prison gangs, were erroneously placed into the same yard cage by Defendants. Plaintiffs alleged that Defendants' error compelled them enter into mutual combat due to their rival gang status, and that they both suffered injuries. Thus, Plaintiffs asserted Eighth Amendment claims of deliberate indifference to their safety resulting from Defendants' actions. Plaintiffs are seeking declaratory relief and monetary damages.

The Court conducted an initial screening of Plaintiffs' complaints pursuant to 28 U.S.C. §1915A(a). On May 3, 2010 and May 10, 2010, the Court issued its Order of Service in each action. The Court found Plaintiffs stated a cognizable Eighth Amendment claim against Defendants for

acting with deliberate indifference toward a serious threat to Plaintiffs' safety. (May 3, 2010 Order in Case no. C 09-1858 SBA (PR) at 3; May 10, 2010 Order in Case no. C 09-3869 SBA (PR) at 3.)

On September 7, 2010 and December 9, 2010, Defendants moved for summary judgment in each action on the grounds that there is no issue as to any material fact, that they are entitled to judgment as a matter of law, and that they are entitled to qualified immunity.

In an Order dated December 10, 2010, the Court granted Plaintiff Navarro an extension of time to file his opposition to Defendants' motion for summary judgment.

Plaintiffs did not file oppositions by the Court's designated deadlines.

On January 10, 2011 and January 21, 2011, Defendants filed notices in each action of Plaintiffs' failures to oppose their motions for summary judgment.

In an Order dated June 10, 2011, the Court directed Defendants to provide complete copies of Plaintiffs' deposition transcripts mentioned in their motions for summary judgment. On June 13, 2011, Defendants provided complete copies of the transcripts.

For the reasons discussed below, the Court GRANTS Defendants' motions for summary judgment in both Plaintiffs' actions.

**FACTUAL BACKGROUND**

The following facts are undisputed unless otherwise noted.

Plaintiffs have been, at all times relevant to these actions, inmates housed at SVSP in Building D-9. (Lopez Compl. at 2; Navarro Compl. at 3.) Building D-9 is an administrative segregation unit that houses inmates who have been deemed dangerous to other inmates or prison staff. (Decl. McClain, Ex. A at 26:12-27:25;[1] Decl. Vindiola ¶ 5.) Most inmates housed in Building D-9 share a cell with another inmate with whom they are deemed compatible. (Decl. Vindiola ¶ 5.) For safety reasons, a Building D-9 inmate is not permitted to use an outdoor exercise yard where he can interact with general population inmates. (Id. ¶ 6.) Instead, a Building D-9 inmate is only permitted to use walk-alone yard cages that he shares with his own cell mate. (Id.) At most, a walk-

[1] Defendants have attached transcripts of Plaintiffs' depositions in support of their motion for summary judgment. (Decl. McClain, Exs. A, B.) As mentioned above, Defendants have provided complete copies of the transcripts.

alone yard cage at Building D-9 will contain two inmates at a time. (Id.) Building D-9 has twenty walk-alone yard cages numbered one through twenty. (Id.) When Building D-9 inmates are permitted to exercise, they are placed in any available walk-alone yard cage because they do not have any particular yard cage assignments. (Id.) Furthermore, Building D-9 inmates are not routinely placed in the same yard cage. (Id.)

Prior to the incident on May 18, 2008, Defendants were new employees of the California Department of Corrections and Rehabilitation (CDCR) who began working as correctional officers at SVSP in April, 2008. (Decl. Rodriguez ¶ 1-2; Decl. Vindiola ¶ 1-2.) Defendants were each placed on a rotation schedule that required them to work in different buildings and areas within the prison. (Decl. Vindiola ¶ 3; Decl. Rodriguez ¶ 3.) Defendants had never personally interacted with Plaintiffs nor reviewed their prison files. (Decl. Rodriguez ¶ 5; Decl. Vindiola ¶ 7.) Consequently, Defendants claim they had no knowledge about whether Plaintiffs were affiliated with any prison gangs, or about who their cell mates were. (Id.) On May 18, 2008, Defendant Vindiola was directed to work as an inner-facility officer, which required that he transport inmates on a bus to and from different areas of the prison, such as the visitation and medical buildings. (Decl. Vindiola ¶ 4.) On May 18, 2008, Defendant Rodriguez was directed to work as a floor officer in building D-9, which required that she escort inmates to and from their cells. (Decl. Rodriguez. ¶ 4.) Based on Defendant Rodriguez's rotation schedule, this was her second day working as a floor officer in Building D-9. (Id.)

Plaintiff Lopez and his cell mate, inmate Eric Sua, were members of a street gang called the Fresno Bulldogs. (Decl. McClain, Ex. A at 15:2-4, 15:22-24, 28:18-19.) Meanwhile, Plaintiff Navarro and his cell mate, inmate Augustine Salas, were members of a street gang known as the Norteños, which is the rival gang of the Fresno Bulldogs. (Id., Ex. A at 15:5-14.)

On May 18, 2008, Plaintiff Navarro and inmate Sua had visitors. (Id., Ex. A at 27:11-16, Ex. B at 24:18-24.) Accordingly, Plaintiff Navarro was removed from his cell in Building D-9 and brought to the visitation building. (Id., Ex. B at 26:4-16.) While Plaintiff Navarro was still at visitation, all Building D-9 inmates -- including Plaintiff Lopez, inmate Sua and inmate Salas -- were taken to the walk-alone yard cages for outdoor exercise. (Id., Ex. B at 29:11-14) Inmate Salas

was placed in yard cage twenty by himself. (Id., Ex. B at 39:23-25). Plaintiff Lopez and inmate Sua were placed in yard cage eighteen. (Id., Ex. A at 29:21-30:2, 35:1-2, Ex. B at 39:18-22.) Inmate Sua was later removed from yard cage eighteen and brought to the visitation building. (Id., Ex. A at 29:18, Ex. B at 29:11-14.) Plaintiff Lopez remained in yard cage eighteen by himself. (Id., Ex. A 29:18-30:2, 33:1-10, Ex. B at 41:1-17.)

When Plaintiff Navarro's visit concluded, Defendant Vindiola transported him by bus from the visitation building to Building D-9. (Decl. Vindiola ¶ 8.) As an inner-facility officer, Defendant Vindiola's duties were only to transport inmates to and from the visitation building while other correctional officers were responsible for the direct escorting of inmates from the bus back to their cells. (Id.) Defendant Rodriguez was directed to escort Plaintiff Navarro to the walk-alone yard cages. (Decl. Rodriguez ¶ 6.) Defendant Vindiola assisted with Plaintiff Navarro's escort to the walk-alone yard cages because no other correctional officers were available to accompany Defendant Rodriguez. (Id.; Decl. Vindiola ¶ 9.) For safety purposes, correctional officer training requires that dangerous inmates be escorted by two correctional officers. (Id.) During the escort, Defendant Rodriguez walked next to Plaintiff Navarro while Defendant Vindiola walked several paces behind them. (Decl. Rodriguez ¶ 6; Decl. Vindiola ¶ 9.) Defendant Vindiola claims he did not hear the conversation between Defendant Rodriguez and Plaintiff Navarro as he followed them through Building D-9 and back outside to the walk-alone yard cages. (Decl. Vindiola ¶ 10.) This was the first time Defendant Rodriguez had ever escorted an inmate from the administrative segregation unit to the walk-alone yard cages. (Decl. Rodriguez ¶ 6.)

Defendant Rodriguez claims that she asked Plaintiff Navarro to which walk-alone yard cage he belonged. (Decl. Rodriguez ¶ 7.) Plaintiff Navarro did not answer her question, and, instead, he stopped in front of yard cage eighteen, which contained only one inmate, Plaintiff Lopez. (Id.) Plaintiff Lopez greeted Plaintiff Navarro by saying "what's up," or something of that nature. (Id.) Plaintiff Lopez willingly cuffed up to facilitate Plaintiff Navarro's transfer into yard cage eighteen. (Decl. Rodriguez ¶ 8; Decl. Vindiola ¶ 11.) Additionally, Plaintiff Navarro willingly entered yard cage eighteen. (Id.) Neither Plaintiff protested to the transfer nor advised Defendants that Plaintiffs were rival gang members and should not be placed in the same yard cage. (Id.) Because Plaintiff

Lopez was in the walk-alone yard cage by himself, and based on both Plaintiffs' complicit conduct, Defendants believed that Plaintiff Navarro belonged in yard cage eighteen and that Plaintiff Lopez was his cell mate. (Decl. Rodriguez ¶ 7; Decl. Vindiola ¶ 12.) Accordingly, Defendant Vindiola assisted Defendant Rodriguez with the transfer of Plaintiff Navarro into yard cage eighteen. (Id.)

In contrast, Plaintiff Navarro asserts that he responded when Defendant Rodriguez asked him to which yard cage he belonged. (Decl. McClain, Ex. B at 39:3-9.) Plaintiff Navarro claims that he verbally indicated to Defendant Rodriguez that his cell mate, inmate Salas, was in yard cage twenty and thus he began walking in that direction.[2] (Id., Ex. B at 39:7-9.) Once Plaintiff Navarro walked towards yard cage twenty, Defendant Rodriguez asked where he was going and stated, "stop playing . . . this is where you're going to go," as she unlocked yard cage eighteen's door. (Id., Ex. B at 39:12-16, 40:8-11.) Plaintiff Navarro then complied and waited to be let into yard cage eighteen. (Id., Ex. B at 41:18-23.) Plaintiffs Navarro and Lopez acknowledge that Defendant Rodriguez seemed genuinely confused and mistakenly believed that Plaintiffs were cell mates. (Id., Ex. A 47:17-22; Ex. B at 41:5-6.) As a result of this mistaken belief, Defendant Rodriguez placed Plaintiff Navarro into yard cage eighteen. (Id., Ex. B at 41:5-17.)

Plaintiffs aver that it is common knowledge at SVSP that members of the two rival gangs must fight each other whenever any opportunity presents itself, or that they will be punished by their own gangs for failing to act accordingly. (Decl. McClain, Ex. A at 17:14-24, Ex. B at 19:3-12.) Therefore, once Defendants completed Plaintiff Navarro's transfer into yard cage eighteen with Plaintiff Lopez, the two inmates mutually attacked each other. (Id., Ex. A at 52:8-15, Ex. B at 45:2-47:15.) Defendants took immediate actions to stop the fight by verbally ordering Plaintiffs to cease fighting, sounding the prison alarm, and using pepper spray. (Decl. McClain, Ex. A at 52:16-54:11. Ex. B at 47:19-48:15; Decl. Rodriguez ¶ 10; Decl. Vindiola ¶ 13.) Plaintiffs initially disregarded Defendants' repeated instructions to cease fighting, but later complied after Defendants, and other assisting correctional officers, sprayed them multiple times with pepper spray. (Id.)

Plaintiff Navarro claims he suffered a broken rib as well as injuries to his forehead and nose,

---

[2] Plaintiff Lopez also claims that Plaintiff Navarro may have informed either Defendant Vindiola or Rodriguez that yard cage eighteen was not the cage to which he belonged. (Decl. McClain, Ex. A at 40:21-25.)

United States District Court
For the Northern District of California

while Plaintiff Lopez claims he suffered injuries to his knee, elbow, wrist and back. (Decl. McClain, Ex. A at 59:13-62:16; Ex. B at 55:24-25.)

**DISCUSSION**

**I. Standard of Review**

Summary judgment is properly granted where there is no genuine issue as to any material fact and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). A verified complaint may be used as an opposing affidavit under Rule 56 of the Federal Rules of Civil Procedure, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving

United States District Court
For the Northern District of California

party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991). If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1105 (9th Cir. 2000).

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

If the moving party does meet its burden of production, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409; Nissan, 210 F.3d at 1105. "[S]elf-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001). However, "[c]onclusory allegations unsupported by factual data cannot defeat summary judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence). Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so. Id. at 1029. "The district court need not examine the entire file for evidence establishing a genuine issue of fact." Id. at 1031.

## II. Evidence Considered

A district court may only consider admissible evidence in ruling on a motion for summary judgment. See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). In

support of Defendants' motions for summary judgment, declarations have been filed by Deputy Attorney General Damon G. McClain as well as Defendants Rodriguez and Vindiola.

As mentioned above, Plaintiffs did not file oppositions to the motions for summary judgment. However, Plaintiff Lopez verified his complaint filed on August 24, 2009 by signing it under the penalty of perjury. Plaintiff Navarro did not verify his complaint filed on April 29, 2009 as it was not signed under the penalty of perjury. Therefore, for the purposes of this Order, the Court will treat Plaintiff Lopez's original complaint filed on August 24, 2009 as an affidavit in opposition to Defendants' motions for summary judgment under Rule 56. See Schroeder, 55 F.3d at 460 & nn.10-11.

## III. Applicable Law

### A. The Eighth Amendment in the Context of Prison Inmates

The Eighth Amendment requires prison officials to provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer, 511 U.S. at 832; DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). The Eighth Amendment's prohibition of cruel and unusual punishment requires that a prison official take reasonable measures to provide for the safety of inmates. See Farmer, 511 U.S. at 834. In particular, prison officials have an affirmative duty to protect inmates from violence at the hands of other inmates. See id. at 833. The failure of a prison official to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment only when two requirements are met: (1) the objective component -- the deprivation alleged must be sufficiently serious, see id. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991); and (2) the subjective component -- the prison official possesses a sufficiently culpable state of mind, see id. (citing Wilson, 501 U.S. at 297).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. Id. at 834 (citing Wilson, 501 U.S. at 298). To satisfy the subjective component, the requisite state of mind depends on the nature of the claim. In prison-conditions cases, the necessary state of mind is one of "deliberate indifference." See, e.g., Allen v.

Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (outdoor exercise); Farmer, 511 U.S. at 834 (inmate safety); Estelle v. Gamble, 429 U.S. 97, 104 (1976) (inmate health); Wilson, 501 U.S. at 302-03 (general conditions of confinement).

A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. See Farmer, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See id. An Eighth Amendment claimant need not show, however, that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. See id. at 842. This is a question of fact. See id. A heightened pleading standard applies to the subjective component of Eighth Amendment claims: the plaintiff must make non-conclusory allegations supporting an inference of unlawful intent. Alfrey v. United States, 276 F.3d 557, 567-68 (9th Cir. 2002) (applying standard to Bivens Eighth Amendment claim). Deliberate indifference describes a state of mind more blameworthy than negligence. Farmer, 511 U.S. at 835 (citing Estelle, 429, U.S. at 104). Neither negligence nor gross negligence will constitute deliberate indifference. See Farmer, 511 U.S. at 835-36 & n.4; see also Estelle, 429 U.S. at 106 (establishing that deliberate indifference requires more than negligence).

**B. Deliberate Indifference to Plaintiffs' Safety**

To be liable for a deliberate indifference claims stemming from the failure to prevent serious harm to an inmate, Defendants Rodriguez and Vindiola must have each individually knew of and consciously disregarded an excessive risk to Plaintiffs' safety. See Farmer, 511 U.S. at 837. Defendants must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and must have also drawn the inference. See id. A prison official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before [she] is obligated to take steps to prevent such an assault." Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). However, before being required to take action a

prison official must have more than a "mere suspicion" that an attack will occur. See e.g., id. at 460 (summary judgment appropriate as to defendants when plaintiff "failed to come forward with any facts showing that defendants had any reason to believe he would be attacked by the assailant").

When, as here, Plaintiffs seek damages against Defendants, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual Defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). When inmates, such as Plaintiffs, seek to hold an individual Defendant personally liable for damages, the causation inquiry between the deliberate indifference and the Eighth Amendment deprivation must be more refined. Id. The focus must be on whether the individual Defendant was in a position to take steps to avert the harm, but failed to do so intentionally or with deliberate indifference. Id. In order to resolve this causation issue, a very individualized approach is applied which accounts for the duties, discretion, and means of each Defendant. Id. Sweeping conclusory allegations will not suffice to prevent summary judgment. Id. at 634. The prisoner must set forth specific facts as to each individual Defendant's deliberate indifference. Id.

Plaintiffs maintain that Defendants were deliberately indifferent to Plaintiffs' safety because they erroneously placed Plaintiff Navarro into yard cage eighteen with Plaintiff Lopez, a rival gang member. Plaintiffs further claim Defendants' error directly compelled both Plaintiffs to engage in mutual combat, which led to subsequent injuries. Plaintiffs argue that Defendants Vindiola and Rodriguez should have known that the erroneous placement of Plaintiffs into the same yard cage would cause a fight and result in potential harm to each Plaintiff.

The Court finds that Plaintiffs have failed to raise a triable issue as to whether Defendants acted with deliberate indifference to their safety. To survive the summary judgment motion, Plaintiffs were required to raise a triable issue of fact as to both the objective and subjective prongs of the deliberate indifference standard. Even viewing the evidence in the light most favorable to Plaintiffs, there is no triable issue because Defendants were not subjectively, deliberately indifferent to a risk to Plaintiffs' safety. The subjective component of an Eighth Amendment violation examines whether the subjective state of mind of the prison official was sufficiently capable. See

Johnson v. Lewis, 217 F.3d 726, 733 (9th Cir. 2000). The facts as alleged support at most an argument that Defendants were negligent because their actions -- stemming from a mistaken belief that Plaintiffs were cell mates -- led Plaintiffs to engage in mutual combat. Negligence and even gross negligence are not enough to amount to an Eighth Amendment violation. Farmer, 511 U.S. at 835. Deliberate indifference is not shown by merely stating that a defendant should have known of a risk, but requires an actual perception of a risk that does not exist merely because a reasonable person should have perceived a risk. Id. at 836 & n.4.

Defendants failed to act with deliberate indifference because they did not possess the requisite state of mind as outlined in Farmer, 511 U.S. at 835. Prior to the incident on May, 18, 2008, Defendants were new employees of the CDCR, who had never personally interacted with nor reviewed the prison files of either Plaintiff. Defendants claim they could not have known that Plaintiffs were rival gangs members, and thus, they did not reasonably expect that Plaintiffs would engage in mutual combat if placed together in a common yard cage. Neither Plaintiff protested to the transfer nor indicated to Defendants that they were rival gang members and should not be placed in the same yard cage. Moreover, Plaintiff Lopez was in walk-alone yard cage eighteen by himself and based on Plaintiffs' complicit conduct, Defendants reasonably believed that Plaintiff Navarro belonged in yard cage eighteen and that Plaintiff Lopez was his cell mate.

In contrast, Plaintiff Navarro asserts that he responded when Defendant Rodriguez asked to which yard cage he belonged by verbally indicating that his cell mate, inmate Salas, was in yard cage twenty. Even viewing the disputed evidence and the inferences drawn therefrom in the light most favorable to Plaintiffs, no reasonable jury could return a verdict against Defendants because the requisite subjective prong of the deliberate indifference standard would still be unsatisfied. Plaintiffs concede that Defendant Rodriguez's erroneous placement of Plaintiffs into the same yard cage was due to her genuine confusion and mistaken belief that Plaintiffs were cell mates. When escorting Plaintiff Navarro to the yard cages, Defendant Rodriguez mistakenly believed that Plaintiff Navarro belonged in yard cage eighteen and that Plaintiff Lopez was his cell mate because: (1) Plaintiff Lopez was in yard cage eighteen by himself; and (2) Plaintiffs' complicit conduct failed to suggest any reason for concern as to any potential harm to them. Thus, Defendant Rodriguez placed

Plaintiff Navarro into yard cage eighteen based on a mistake, which, as mentioned above, amounts at most to negligence rather than deliberate indifference.

Defendant Vindiola also did not possess the requisite subjective state of mind to satisfy the deliberate indifference standard. Based on the scope of his responsibilities as an inner-facility officer, Defendant Vindiola assumed that Defendant Rodriguez transferred Plaintiff Navarro to the proper yard cage. Defendant Vindiola had no reason to assume otherwise. Defendant Vindiola did not hear the conversation between Plaintiff Navarro and Defendant Rodriguez. Additionally, Plaintiff Lopez willingly cuffed up without any verbal or physical protest to indicate any opposition to Plaintiff Navarro's transfer into the same yard cage.

At best, Defendants may have acted negligently in failing to assure the safety of Plaintiffs. Plaintiffs have not shown that either Defendant acted with criminal recklessness in mistakenly placing both Plaintiffs into the same yard cage. Therefore, the Court finds that Plaintiffs have failed to raise a triable issue of fact as to whether Defendants acted with deliberate indifference under the subjective prong of Farmer, 511 U.S. at 834. Accordingly, Defendants are entitled to a judgment as a matter of law on Plaintiffs' deliberate indifference to safety claim.

**C. Qualified Immunity**

Defendants also claim that summary judgment is also proper in this case because they are entitled to qualified immunity from liability for civil damages. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by Saucier and holding that a court may exercise its

discretion in deciding which prong to address first, in light of the particular circumstances of each case). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that her/his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 201-02.

Assuming arguendo that Plaintiffs were deprived of a constitutional right, the Court next considers whether Defendants' conduct was clearly unlawful. In evaluating Defendants' conduct, the Court considers whether the contours of the right were clearly established, an inquiry that "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201. The law was clearly established that a correctional officer could not disregard a substantial risk of serious harm to an inmate of which he was aware, and that he has a duty to protect a prisoner from violence at the hands of other prisoners. See Farmers, 511 U.S. at 833. The Ninth Circuit Court of Appeals further clarified the qualified immunity analysis for a deliberate indifference claim in Estate of Ford v. Ramirez- Palmer, 301 F.3d 1043 (9th Cir. 2002). The court explained that, for an Eighth Amendment violation based on a condition of confinement (such as a safety risk), the prison official must subjectively have a sufficiently culpable state of mind. The court held,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inferences . . . . Thus, a reasonable prison official understanding that he cannot recklessly disregard a substantial risk of serious harm, could know all of the facts yet mistakenly, but reasonably, perceive that the exposure in any given situation was not that high. In these circumstances, he would be entitled to qualified immunity.

Id. at 1050 (quoting Saucier, 533 U.S. at 205). The court explained that even though the general rule of deliberate indifference had been expressed in Farmer, no authorities had "fleshed out 'at what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes.'" Id. at 1051 (quoting Farmer, 511 U.S. at 834 n.3). Because Farmer left open the question of when it would be clear to a reasonable officer that the risk of harm to one inmate from another changes from being a risk of some harm to a substantial risk of serious harm, "[t]his necessarily informs 'the dispositive question' of whether it would be clear to reasonable correctional officers that their conduct was unlawful in the circumstances that [they] confronted." Id.

Applying Estate of Ford to the facts here, the Court finds that it would not have been clear to a reasonable officer that placing Plaintiffs together in the same yard cage would create a risk of some (or even any) harm to either inmate. See Estate of Ford, 301 F.3d at 1049-50 (granting qualified immunity to correctional officers where the information available to them about inmate's dangerous cell mate did not make it so clear that the cell mate would harm the inmate that no reasonable officer could have allowed them to be celled together). Defendant Rodriguez's mistaken belief stemmed from that fact that Plaintiff Lopez was in yard cage eighteen by himself and both Plaintiffs' complicit conduct indicated no reason for concern or suspicion of any harm to either inmate. With respect to Defendant Vindiola, he was merely assisting Defendant Rodriguez with her duties to facilitate greater safety and the scope of his duties did not lead to an assumption that Plaintiff Navarro was being transferred into an improper yard cage with a dangerous cell mate. A reasonable officer, facing the same circumstances as both of these Defendants, could not have found his actions to be unlawful if he mistakenly believed that Plaintiff Navarro belonged in yard cage eighteen and that Plaintiff Lopez was the proper cell mate.

Because a reasonable officer -- facing the same circumstances as Defendants on May 18, 2008 -- would not have been on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. See Saucier, 533 U.S. at 202. Accordingly, Defendants are entitled to qualified immunity; therefore, their motions for summary judgment are GRANTED.

## CONCLUSION

In light of the foregoing, Defendants' motions for summary judgment (Navarro docket no. 13; Lopez docket no. 21) are GRANTED. Plaintiffs' federal claims stemming from the allegations in their complaints have all been resolved; however, the Court's ruling does not foreclose Plaintiffs from proceeding with any related negligence or other state law claims in state court.

The Clerk of the Court shall enter judgment in favor of Defendants Rodriguez and Vindiola. The Clerk shall also terminate all pending motions and close the file. This Order terminates Docket no. 13 in Case no. C 09-1858 SBA (PR) and Docket no. 21 in Case no. C 09-3869 SBA (PR).

This Order shall be filed in both actions.

IT IS SO ORDERED.

DATED: _7/25/11

SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

JOHN J. NAVARRO,

Plaintiff,

v.

CORRECTIONAL OFFICER VINDIOLA (SVSP), ET AL et al,

Defendant.
_______________________________________/

Case Number: CV09-01858 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 25, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

John J. Navarro T-75240
California State Prison - Kern Valley
P.O. Box 6000
Delano, CA 93216-6000

Dated: July 25, 2011

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

United States District Court
For the Northern District of California